VINES *v.* VINES.

1. DIVORCE—CUSTODY OF CHILD.

What is best for the child is the question before the Supreme
Court on an appeal from a trial court's order relative to
custody of a child of divorced parents (CL 1948, § 722.541).

2. APPEAL AND ERROR—CHANCERY CASES—DE NOVO REVIEW.

The Supreme Court hears chancery cases *de novo* but is reluctant
to reverse a trial judge who has not abused his discretion.

3. DIVORCE—CUSTODY OF CHILD—DISCRETION OF COURT.

It was not an abuse of discretion for trial court to award custody
of 7-year-old daughter of parties to suit for divorce to the
mother some 3 years after the divorce had been granted, where
mother had recovered both her health and equanimity since
the divorce, had remarried, stopped working away from home,
and had established a home where the child was welcome,
the father being accorded liberal visitation hours and required
to pay a weekly sum for the proper support of the child
while with the mother.

4. SAME—CUSTODY OF CHILD—COSTS.

No costs are allowed defendant mother upon affirmance of order
granting her petition for custody of daughter, where father
had appealed.

Appeal from Wayne; Maher (Thomas F.), J.
Submitted October 16, 1955. (Docket No. 92, Cal-
endar No. 46,486.) Decided December 28, 1955.

Petition by defendant, June Corriene Vines Koch,
to modify divorce decree granted plaintiff, John
William Vines, previously. Decree modified to
grant defendant custody of minor child. Plaintiff
appeals. Affirmed.

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 17 Am Jur, Divorce and Separation § 683.
[2] 3 Am Jur, Appeal and Error §§ 815, 895.

*Douglas Leo Paterson,* for plaintiff.

*David J. Cohen,* for defendant.

BUTZEL, J. John W. Vines, plaintiff, was awarded a decree of divorce from June C. Vines, defendant, on April 20, 1948. It became final 6 months thereafter. He was awarded custody of the only child, a little girl less than 3 years old at the time. Defendant was given liberal visitation hours. On March 13, 1953, almost 5 years later, defendant filed a petition to modify the decree so as to award her the custody of the child, then about 7 years of age. She alleged that at the time of the divorce the provision in the decree in regard to the custody of the little girl was based on an agreement between the parties. Plaintiff in his answer admits that this allegation is true. Defendant further shows that on October 14, 1950, she married Carl S. Koch and the marriage has been happy and successful; that they occupy a 3-bedroom home, not far from a school; that they contemplate purchasing the home; that they have fully equipped it, including a bedroom completely furnished and available for the child. Defendant testified that at the time of the decree she was obliged to work for a living but that is no longer necessary. She claims that it is in the best interest of the child that it be given to her, its natural mother, and that notwithstanding the fact that the present environment of the child in the home of plaintiff's parents is good, the child would be far better off if she had the custody, control and education of her own child. Testimony showed that at the time of the divorce she was suffering from ulcers of the stomach, was very much emotionally disturbed, was without funds and obliged to earn her own living and, therefore, could not give the child the care and custody required. Evidently she was thinking of the best interests of

the child at the time.· She was a person of fine character, who has been doing secretarial work for the government, and there is not even the slightest criticism of her character. Plaintiff testified that defendant would take proper care of the child, his only criticism of her being that she was too meticulous but that she was very competent. The testimony leaves no doubt that she is physically, financially, mentally and morally a proper person to take care of the child.

· The case is rather unusual in that each party apparently expresses the highest regard and friendship for the other. In fact, after the divorce they met frequently in a platonic relationship, plaintiff at times remaining in defendant's apartment overnight. She took a trip to California some time later· and she recovered both her health and her equanimity. She met a Mr. Koch, who earns a good living in an automobile factory, and subsequently she married him. He·also is fond of the little girl. Defendant was able to save sufficient from her earnings so as to· furnish the room for the little girl in her new home and she has also stopped working, although she stated she might do some secretarial work at home. She now has every facility to give the child the loving care, education (both secular and religious), devotion and companionship that a little girl should receive from her mother. There is no question but that the little girl received very good care from her father's parents. Plaintiff, however, is hard working, does not come home until late in the day, also works on Saturdays, and he gives the child most of his time on alternate Sundays, the mother being entitled to have the child every other week end. The child's paternal grandfather is 70 years of age, the grandmother 66. The latter properly looks after the child but she is getting old and her hearing is impaired.

We are mindful of the statute, CL 1948, § 722.541 (Stat Ann § 25.311), which provides that the mother of children under 12 shall be entitled to their custody, although a court of competent jurisdiction may deem it just and proper to make a different order. The question before us is what is best for the child. In coming to our conclusion, we are not at all oblivious to the fact that the child should not be shuttled back and forth.

Plaintiff calls attention to *Lazell* v. *Lazell,* 271 Mich 271, where a boy over 9 years old had been brought up by his father, a former schoolteacher living on a farm, and where the mother sought to have the decree changed to give her the custody of the child so that she could take him to the city. The boy was happy, had the constant companionship of his father, and was very fond of life on a farm. We held that the welfare of the boy was the uppermost consideration and that the judge was not in error in letting the boy remain with his father on the farm. The custody statute, *supra,* has been frequently before the Court. The cases are collected in *Eichholtz* v. *Eichholtz,* 319 Mich 42, where we have practically held that only when the mother is not of a good moral character or where conditions exist in her home that would make it unfit for the child, may the court well ignore the provisions of the statute and give the father custody of a child under 12. See *Epstein* v. *Epstein,* 234 Mich 200. We quote plaintiff's own testimony:

"It is a fair conclusion that I had absolute confidence in my former wife that she would take proper care of the child."

We do hear chancery cases *de novo,* but we are reluctant to reverse, except for very potent reasons, where the trial judge did not abuse his discretion in making his determination as to what was for

the best interest of the child. See *Sargent* v. *Sargent*, 320 Mich 33, and the many cases therein cited. We do not believe that the judge abused his discretion in the instant case in amending the decree so as to award the custody of the child to its mother and with liberal visitation hours to the father who is to pay a weekly sum for the proper support of the child while it is with the mother.

The decree, as amended, is affirmed, but without costs.

CARR, C.J., and SMITH, SHARPE, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.